IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREENWOOD RACING INC., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> AMERICAN GUARANTEE & LIABILITY INSURANCE CO. and STEADFAST INSURANCE CO., <br><br> *Defendants.* | CIVIL ACTION <br> NO. 21-01682 |

**PAPPERT, J.**                                                                                   October 20, 2021

**MEMORANDUM**

  Greenwood Racing Inc. and its subsidiaries (collectively "Greenwood") asked a Pennsylvania state court to declare that their insurers, American Guarantee and Liability Insurance Company ("AGLIC") and Steadfast Insurance Company ("Steadfast"), are required to insure losses sustained by Greenwood as a result of the COVID-19 pandemic. The insurers removed the case to federal court and Greenwood moves to remand. The Court denies the Motion, particularly in light of recent guidance from the Third Circuit Court of Appeals.

I

  Greenwood owns and operates a casino, racetrack and other gambling facilities in Pennsylvania and New Jersey. (Compl. ¶ 1, ECF No. 1-3.) The COVID-19 pandemic and subsequent government actions forced these establishments to close for several months. (*Id.* ¶¶ 161–64, 170.) Even when they reopened, government orders and the threat of the virus prevented a return to business as usual and Greenwood suffered substantial losses. (*Id.* ¶¶ 165–67, 171.)

1

Greenwood believes AGLIC is obligated to cover those losses under several provisions of its commercial property policies for the 2019–2020 and 2020–2021 policy periods. (*Id.* ¶¶ 69–90.) Specifically, it seeks reimbursement based on the policies' "Property Damage," "Time Element," "Extra Expense," "Civil or Military Authority" and "Ingress/Egress" coverage, as well as their "Loss of Attraction" endorsements. (*Id.*) It also asserts that its losses are covered by the environmental liability policy it purchased from Steadfast. (*Id.* ¶¶ 96–98.)

AGLIC denied coverage under every provision other than the "Loss of Attraction" endorsement in Greenwood's 2019-2020 commercial property policy. (*Id.* ¶ 257.) Steadfast likewise denied coverage. (*Id.* ¶ 267.)

Greenwood then sought a judgment in the Bucks County Court of Common Pleas declaring its rights under the policies. (*Id.* ¶¶ 273, 281.) The insurers removed the case to federal court and Greenwood moved to remand, arguing that the Court should decline to exercise its jurisdiction under either the Declaratory Judgment Act or *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (Pls.' Mem. Law Supp. Mot. Remand at 1, ECF No. 2-1; Pls.' Reply Mem. Law Further Supp. Mot. Remand at 9–10, ECF No. 19.) Following the Third Circuit Court of Appeals' decision in *DiAnoia's Eatery, LLC v. Motorists Mutual Insurance Co.*, 10 F.4th 192 (3d Cir. 2021), the Court ordered supplemental briefing addressing the impact of that ruling on Greenwood's Motion. (ECF No. 23.)

## II

The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.

§ 2201 (emphasis added). The Act is an exception to the general rule that federal courts must exercise the jurisdiction given to them. *DiAnoia's Eatery*, 10 F.4th 192. Even when a district court has subject matter jurisdiction over a declaratory judgment action, it may abstain from hearing it. *Id.*[1]

AGLIC and Steadfast initially argued the Court lacked discretion to remand the case under the Declaratory Judgment Act because the Complaint sought legal rather than declaratory relief. (Defs.' Joint Mem. Law Opp'n Mot. Remand at 11, ECF No. 18.) They withdrew this argument, however, in response to the Third Circuit's decision in *DiAnoia's Eatery*. (Defs.' Suppl. Mem. Law Opp'n Mot. Remand at 2 n.1, ECF No. 25.) There, the Third Circuit expressed skepticism that a case brought as a declaratory judgment action should ever be treated as "something other than a genuine declaratory judgment action for purposes of the DJA." *DiAnoia's Eatery*, 10 F.4th 192, 202. Like the plaintiffs in *DiAnoia's*, Greenwood seeks only declaratory relief. (Compl. ¶ 281.)

### III

The Court's discretion is not unlimited, however. To begin, the "existence or non-existence of pending parallel state proceedings" will "militate[] significantly" either for or against exercising jurisdiction. *Reifer*, 751 F.3d at 144. Where there are no parallel state proceedings, "district courts declining jurisdiction should be rigorous in

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Greenwood's claims exceed the amount in controversy requirement, (Compl. ¶¶ 38, 92, 281), and the corporate Plaintiffs are citizens of Delaware, Pennsylvania, and New Jersey, (*Id.* ¶¶ 22–27), while the Defendants are citizens of Illinois or New York. (*Id.* ¶¶28–29.) In addition, Defendants allege that no members of Plaintiff ACRA Turf Club, LLC, are citizens of Illinois or New York. (Notice of Removal ¶ 2, ECF No. 1). A removing defendant may plead diversity jurisdiction by alleging that it is not a citizen of the plaintiffs' states of citizenship. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015).

ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.*

In *Reifer v. Wesport Insurance Corporation,* the Third Circuit provided a non-exhaustive list of factors district courts should consider:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146.

The Third Circuit has also instructed courts to be "particularly reluctant" to exercise jurisdiction over declaratory judgment actions where the "applicable state law is 'uncertain or undetermined.'" *Id.* at 141 (quoting *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000), *as amended* (Jan. 30, 2001)).

Recently, the Third Circuit revisited and clarified three of the *Reifer* factors. It explained that the first is not "a vehicle for considering the effect of a declaratory judgment on the development of state law." *DiAnoia's Eatery*, 10 F.4th at 205. It

simply asks "whether a declaration would bring about a 'complete termination of the controversy' between the parties and thereby avoid duplicative, piecemeal litigation." *Id.* (citing *Developments in the Law: Declaratory Judgments — 1941–1949*, 62 Harv. L. Rev. 787, 805 (1949)). Similarly, "the fifth factor's 'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." *Id.* at 206.

With respect to the third factor, the Court of Appeals emphasized that courts must "squarely address the alleged novelty" of state law issues raised by the case. *Id.* at 207 (quoting *Reifer*, 751 F.3d at 149). It then distinguished between novel legal questions and novel applications of established legal rules. *Id.* at 208–09. Only novel legal questions weigh in favor of abstention because "[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." *Id.* at 197 (quoting *Reifer*, 751 F.3d at 147) (alteration in original).

IV

There are no parallel state proceedings between Greenwood and its insurers. This "militates significantly" in favor of retaining jurisdiction over Greenwood's declaratory judgment action. *Reifer*, 751 F.3d at 144. Abstention is therefore appropriate only if other factors demonstrate that federal court would be an inappropriate or impractical forum, despite the absence of parallel litigation. *Id.* Here, seven of the eight *Reifer* factors are clearly neutral or weigh against abstention. Greenwood recognizes as much; their supplemental briefing addresses only the third factor. (Pls.' Suppl. Mem. Law Supp. Mot. Remand at 5–10, ECF No. 24.) The Court

will nonetheless evaluate the other factors before considering the alleged novelty of the state law issues raised by Greenwood.

A

The first *Reifer* factor weighs against abstention because a declaratory judgment in this case "would bring about a complete termination of the parties' disputes without piecemeal litigation." *DiAnoia's Eatery*, 10 F.4th at 206. Like the plaintiffs in *DiAnoia's Eatery*, Greenwood effectively conceded the first factor by asserting in their complaint that a declaratory judgment would "resolve" their coverage disputes with AGLIC and Steadfast. *Compare id. with* Compl. ¶ 3. Nor is there any indication that an "interested party . . . has not been joined" or that a "predicate issue . . . would undermine the usefulness of a judgment interpreting the parties' obligations." *DiAnoia's Eatery*, 10 F.4th at 206.

The second factor, "the convenience of the parties" does not support abstention. Greenwood's subsidiary and co-plaintiff City Turf Club Op Co. is based in Philadelphia. (Cmpl. ¶ 25.) Its other operations are all in the Philadelphia region. (*Id.* at ¶¶ 23–27.) It would not be inconvenient for the Plaintiffs to litigate in Philadelphia, and Philadelphia may be more convenient than Doylestown for the Illinois-based Defendants.

The fourth factor, "the availability and relative convenience of other remedies," weighs against abstention because Greenwood seeks only a declaratory judgment, a form of relief that Pennsylvania and federal courts "are equally able to grant." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 289 (3d Cir. 2017).

6

The fifth, sixth, seventh, and eighth factors do not support Greenwood's motion either. This case is the only litigation between Greenwood and the insurers; the same issues are not pending between the same parties in state court. *DiAnoia's Eatery*, 10 F.4th at 206. Consequently, there is no risk of duplicative litigation, nor any evidence of a race for *res judicata*. *See Tumi, Inc. v. Factory Mut. Ins. Co.*, Civ. No. 21-02752, 2021 WL 4170051, at *5 (D.N.J. Sept. 14, 2021). The eighth factor is inapplicable because this case concerns first-party insurance, not third-party liability insurance where the insurer would have a duty to defend the insured.

B

The only remaining question is whether the alleged novelty of the state law issues raised by this case outweighs the absence of parallel state proceedings. It does not.

Courts should not abstain from cases that can be decided by "applying familiar principles of insurance law to the language of the insurance policy." *Tumi,* 2021 WL 4170051, at *3 (D.N.J. Sept. 14, 2021). The guiding principles of Pennsylvania insurance law are well settled. *See Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020); *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019); *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 171 (Pa. 2005). This is not a situation where there is "such a paucity of authority from any Pennsylvania court . . . that predicting state law would be impossible." *DiAnoia's Eatery*, 10 F.4th at 206. Unless there are specific issues where Pennsylvania law is truly unsettled, this factor does not weigh against retaining jurisdiction.

Greenwood raises three purportedly "novel and unsettled issues" that it believes justify abstention: (1) the "interplay" between the policies issued by AGLIC and Steadfast, which are both subsidiaries of Zurich Insurance Group Ltd., (2) the inclusion of the phrase "risks of" in the definition of "Covered Cause of Loss" in the commercial property policies and (3) whether the inclusion of the term "virus" in the commercial property policies' contamination exclusion violated Greenwood's reasonable expectations.

None of these issues appear novel or unsettled. First, Greenwood does not explain what *legal* issue is raised by the Defendants' denial of coverage under both the corporate property policies and the environmental liability policy. There is nothing contradictory about an insurer asserting one policy does not cover loss caused by a virus while simultaneously denying coverage under a second because no virus was present. That may follow naturally from the insured claiming, but failing to demonstrate, that a virus caused it loss. Moreover, Pennsylvania courts have declined to override the terms of insurance policies simply to harmonize an insured's policies with one another. *See Pulleyn v. Cavalier Ins. Corp.*, 505 A.2d 1016, 1020 (Pa. Super. Ct. 1986) ("[D]ifferent policies may or may not be mutually exclusive; each policy must be examined on its own terms."); *Wolfe v. Ross*, 115 A.3d 880, 893 n.8 (Pa. Super. Ct. 2015).

Second, the phrase "risks of" in the corporate property insurance policy does not raise a novel issue. As Greenwood acknowledges, the phrase was once standard in insurance contracts. (Compl. ¶¶ 49–51.) Pennsylvania courts have frequently interpreted policies with similar language. *See e.g. Miller v. Bos. Ins. Co.*, 218 A.2d 275,

8

278 (Pa. 1966); *Raybestos-Manhattan, Inc. v. Indus. Risk Insurers*, 433 A.2d 906, 908 (Pa. Super. Ct. 1981).

Nor does the phrase "risks of" meaningfully distinguish Greenwood's policies from similar corporate property policies that do not include that language. While Greenwood's property policies define a "covered cause of loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded," (Zurich EDGE Policy at § 711, ECF. No 1-4 at 120), each of the provisions under which it claims coverage, other than the loss of attraction endorsement, requires "direct physical loss of or damage."[2] That "all risks" of loss or damage are "covered causes of loss" does not eliminate the need to show that "direct physical loss . . . or damage" occurred. *See e.g. Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 995–96 (Pa. Super. Ct. 2009) (explaining that a provision of a similar "all risks" policy required that the losses result from or be incurred because of "direct physical loss or damage"); *Bergdoll v. York Water Co.*, No. 2169 C.D. 2006, 2008 WL 9403180, at *14 (Pa. Commw. Ct. Apr. 1, 2008) (describing a policy with nearly identical language as "a standard form property insurance policy which insures . . . against *direct physical loss or damage*") (emphasis added).

The Pennsylvania Supreme Court's decision in *401 Fourth Street. Inc. v. Investors Insurance Group*, 879 A.2d 166, 168 (Pa. 2005), does not change this result. In that case, the policy covered "loss or damage caused by or resulting from risks of

---

[2] *See id.* at § 1.01, at 75 ("This Policy Insures against direct physical loss of or damage"); § 4.01.01, at 86 (limiting time element coverage to suspensions caused by "direct physical loss of or damage"); § 4.02.03, at 88 (limiting extra expense coverage to expenses incurred "due to direct physical loss of or damage"); § 5.02.03, at 92 (limiting civil authority coverage to losses incurred from a civil authority's response to "direct physical loss of or damage"); § 5.02.15, at 97 (limiting ingress/egress coverage to situations involving a "physical obstruction due to direct physical loss of or damage"). The analogous provisions of its 2020-2021 policy are the same.

direct physical loss involving collapse of a building." *Id.* at 169. The court concluded that because the policy included the phrase "risks of" and the modifier "involving," the coverage "extend[ed] beyond the situation in which an insured's building falls to the ground." *Id.* at 174. Critically, however, no terms modified the phrase "loss or damage" in that policy. Greenwood's policy, in contrast, covers only *direct physical* loss or damage from covered causes.[3]

Third, the interpretation of the corporate property policies' contamination exclusion does not present any novel question of state law. Greenwood asserts that the inclusion of the word "virus" in the policies' definition of contamination violated their reasonable expectations and is not enforceable under Pennsylvania law. But Pennsylvania's reasonable expectations doctrine is well established. Generally, "[a]n insured may not complain that his or her reasonable expectations were frustrated by policy provisions and limitations [that] are clear and unambiguous." *Est. of O'Connell ex rel. O'Connell v. Progressive Ins. Co.*, 79 A.3d 1134, 1137 (Pa. Super. Ct. 2013) (quoting *Pempkowski v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 398, 401 (Pa. Super. Ct. 1996)) (alterations in original). Courts may only override unambiguous terms in a policy when necessary "to protect non-commercial insureds from . . . deception and non-apparent terms." *Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 97 (Pa.

---

[3]   Nor is the meaning of the phrase "physical loss or damage" in this context so close or unsettled that it would justify abstention. The Third Circuit has already applied this language to damage from sources invisible to the naked eye, *see Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002), and predicted that the Pennsylvania Supreme Court would adopt a similar interpretation if it considered the question, *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826 (3d Cir. 2005). Several Pennsylvania trial courts have explicitly embraced *Port Authority*'s reasoning. *See Lehigh Valley Baseball, LP v. Philadelphia Indem. Ins. Co.*, No. 00958, 2021 WL 3029899, at *4 (Pa. Ct. C.P. Philadelphia Cnty. June 17, 2021); *The Scranton Club v. Tuscarora Wayne Mut. Group, Inc.*, No. 20 CV 2469, 2021 WL 454498, at *14–16 (Pa. Ct. C.P. Lackawanna Cnty. Jan. 25, 2021).

Super. Ct. 2015); *see also Matcon Diamond, Inc. v. Penn Nat. Ins. Co.*, 815 A.2d 1109, 1114 (Pa. Super. Ct. 2003). Whatever the merits of Greenwood's reasonable expectations argument, they are not grounds for remanding the case. Again, "[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." *DiAnoia's Eatery*, 10 F.4th at 197.

Greenwood fails to identify any truly novel issue of Pennsylvania law. Consequently, there is no reason for the Court to "step back" in favor of Pennsylvania courts. *Summy*, 234 F.3d at 136. If anything, "the public interest in settlement of the uncertainty of obligation" weighs *against* abstention. Steadfast's motion to dismiss is fully briefed. (ECF Nos. 12, 20 and 21). Remanding the case might prolong this litigation unnecessarily and prevent a speedy determination of the Defendants' obligations.

IV

Abstention is similarly unwarranted under the *Colorado River* doctrine. This should come as no surprise, since *Colorado River* abstention is a narrow exception "to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 817. The *Colorado River* doctrine allows federal courts to abstain where there is a parallel state proceeding and "extraordinary circumstances" justify abstention. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009).

This case satisfies neither criteria. Again, there is no parallel state proceeding. That should be the end of the matter, because *Colorado River* addresses "situations involving the contemporaneous exercise of concurrent jurisdictions." *Colorado River*,

11

424 U.S. at 817; *see also Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 425 (E.D. Pa. 2020). But even if *Colorado River* abstention were permissible in this situation, no "extraordinary circumstances" warrant it.

Courts consider six factors under *Colorado River*'s second prong:

(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether federal or state law controls; and

(6) whether the state court will adequately protect the interests of the parties.

*Nationwide*, 571 F.3d at 308 (alterations in original). "The balancing of factors is 'heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

None of these factors justify abstention. Most are irrelevant: this is not an *in rem* case, litigating in federal court will not inconvenience either party, there is no risk of piecemeal litigation, and both federal and state courts can protect the interests of the parties. The two remaining factors — "the order in which jurisdiction was obtained" and "whether federal or state law controls" — are clearly insufficient by themselves to justify abstention. Otherwise, districts courts could abstain from every diversity action removed to federal court. Abstention from the exercise of federal jurisdiction, however, "is the exception, not the rule." *Colorado River*, 424 U.S. 800, 813.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT